NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| HOWARD JOHNSON INTERNATIONAL, INC., | Civil Action No. 14-4611 |
| *Plaintiff*, | **OPINION** |
| v. | |
| SSR, INC., *et al*, | |
| *Defendants*. | |

**John Michael Vazquez, U.S.D.J.**

This matter comes before the Court on Plaintiff Howard Johnson International, Inc.'s ("HJI") unopposed motion for summary judgment against Defendants SSR, Inc. ("SSR") and Kanigiri Gade. D.E. 34. The Court reviewed all submissions made in support of the motion and considered the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons that follow, Plaintiff's motion is **GRANTED in part and DENIED in part**.

I.  **FACTS AND PROCEDURAL HISTORY**

HJI signed a "Franchise Agreement" (the "Agreement") with SSR on September 3, 2010 that permitted SSR to operate a 100-room Howard Johnson facility in Richmond, Virginia (the "Facility") for a fifteen-year term. Statement of Undisputed Material Facts ("SUMF") ¶¶ 16, 19, D.E. 34-3. The room count was later increased to 101. *Id.* ¶ 16.

Pursuant to Section 7 and Schedule C of the Agreement, SSR was required to make payments to HJI for royalties, assessments, taxes, interest, reservation system user fees, and other

fees (collectively, "recurring fees"). *Id.* ¶ 20. In addition, Section 11.2 provided that HJI could terminate the Agreement for various reasons, including failure to pay any amount due to HJI under the Agreement and failure to remedy a default under the Agreement within thirty days of written notice from HJI. *Id.* ¶ 27. Moreover, in the event of a termination under Section 11.2, SSR agreed to pay liquidated damages to HJI in accordance with a specified formula. *Id.* ¶ 28. That formula required SSR to pay $2,000 for each room that it was authorized to operate, for a total of $202,000. *Id.* ¶ 29. Further, Section 7.3 states that interest on any overdue amount owed to HJI would accrue at a rate of 1.5% per month until the amount was paid. *Id.* ¶ 46. Finally, under Section 17.4, HJI is entitled to reasonable attorneys' fees and costs incurred in connection with legal proceedings instituted to recover monies due and owing under the Franchise Agreement. *Id.* ¶ 56.

Gade, the president and 100% owner of SSR, also signed a "Guaranty." The Guaranty provided that upon SSR's default under the Agreement, Gade would make payment or perform any unpaid or unperformed obligations of SSR. *Id.* ¶¶ 5-6, 33-34. In addition, Gade agreed to be responsible for any fees and costs that SSR incurred under the Agreement and Guaranty. *Id.* ¶ 35.

HJI owns, and has exclusive rights to license, use of the service mark HOWARD JOHNSON®, and related trade names and service marks. *Id.* ¶ 8. As provided in 15 U.S.C. § 1111, HJI has given notice to the public of the registration of the HOWARD JOHNSON® mark. *Id.* ¶ 10. Through its franchise system, HJI licenses it marks to guest lodging franchisees; "HJI allows its licensees to utilize the HOWARD JOHNSON® marks and to promote the HOWARD JOHNSON® brand name." *Id.* ¶ 12. Thus, as a franchisee, SSR was permitted to use the HOWARD JOHNSON® brand name and marks with respect to the Facility.

On January 9, 2013, HJI notified SSR by letter that it was in breach of the Agreement because SSR owed approximately $73,000 in outstanding recurring fees. HJI gave SSR ten days

2

to cure the deficiency and informed SSR that if the deficiency was not cured, the Agreement could be subject to termination. *Id.* ¶ 39. On May 30, 2013, HJI again notified SSR by letter that it was in breach of the Agreement because SSR owed approximately $89,0000 in outstanding recurring fees. HJI gave SSR another ten days to cure the deficiency and again informed SSR that the Agreement could be subject to termination if the deficiency was not cured. *Id.* ¶ 40.

SSR failed to cure the deficiencies. As a result, on September 13, 2013, HJI terminated the Agreement. In the termination letter, HJI (1) informed SSR that it must remove all Howard Johnson marks within ten days, or "de-identify the Facility"; (2) stated that SSR was required to pay liquidated damages as required under the Agreement; (3) demanded that SSR pay all outstanding recurring fees through the date of termination; and (4) requested that Gade perform her obligations under the Guaranty. *Id.* ¶ 42. SSR, however, failed to remove the Howard Johnson signage "despite receiving notification from HJI to cease and desist from the misuse of the HOWARD JOHNSON® marks." *Id.* ¶¶ 43. In fact, Defendants did not remove the signage until December 11, 2013. *Id.* ¶ 44. In addition, SSR failed to pay the outstanding recurring fees or liquidated damages, and Gade has not performed any obligations under the Guaranty. *Id.* ¶¶ 45-46.

On July 23, 2014, HJI filed its Complaint against Defendants alleging (1) SSR breached the Agreement due to its failure to pay the outstanding recurring fees, (2) Gade failed to perform under the Guaranty; and (3) a violation of Lanham Act due to Defendants' misuse of the HOWARD JOHNSON® marks post termination. HJI sought to recover the outstanding recurring fees, liquidated damages, infringement damages, interest, attorneys' fees, and costs. D.E. 1. Defendants filed an answer, counterclaim, and third-party complaint on July 17, 2015. Defendants counterclaim and third-party complaint asserted claims for detrimental reliance, breach of the

covenant of good faith and fair dealing, and breach of contract.[1]  D.E. 14.  HJI answered the counterclaims on August 17, 2015.  D.E. 16.

HJI filed this motion for summary judgment on August 12, 2016.  D.E. 33-34.  HJI seeks summary judgment for the first, third, fourth, fifth, sixth, and seventh counts of its complaint.  HJI seeks $156,878.62 in outstanding recurring fees, inclusive of interest; $307,497.58 in liquidated damages, inclusive of interest; $18,384.83 in infringement damages; and $9,806 in attorneys' fees and costs.  SUMF ¶¶ 46, 53-43, 56.  HJI also seeks summary judgment as to Defendants' counterclaims.  HJI argues that they should be dismissed with prejudice because the counterclaims are devoid of factual and legal merit.  Plf's Br. at 20-22.  Defendants did not oppose Plaintiff's motion.

## II.     SUMMARY JUDGMENT STANDARD

Where, as here, a motion for summary judgment is unopposed, Fed. R. Civ. P. 56 "still requires the Court to satisfy itself that summary judgment is proper because there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Ruth v. Selective Ins. Co. of Am.* No. 15-2616, 2017 WL 592146, at *2 (D.N.J. Feb. 14, 2017).  A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment. *Id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and

---

[1] The third-party complaint was brought against Wyndham Worldwide Corporation and Wyndham Hotels and Resorts, LLC.  D.E. 14.  Defendants, however, never served the third-party complaint on either party.

all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)). A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). For an unopposed motion, a movant who files a proper Local Civil Rule 56.1 statement of undisputed material facts "receives the benefit of the assumption that such facts are admitted for purposes of the summary judgment motion." *Ruth*, 2017 WL 592146, at *2 (citing L. Civ. R. 56.1). "Accordingly, where a properly filed and supported summary judgment motion is unopposed, it would be an exceptional case where the court concludes that summary judgment should nonetheless be denied or withheld." *Id.*

Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322. "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

### III.   ANALYSIS

#### A.   Breach of Contract Claims

##### 1.   Breach of Contract as to SSR (Counts Three and Five)

In Counts Three and Five, HJI asserts claims for breach of contract due to SSR's failure to pay recurring fees as required by the Agreement. Compl. ¶¶ 54-59, 64-67. To establish a breach

of contract under New Jersey law,[2] a plaintiff must demonstrate that there is (1) a valid contract; (2) plaintiff performed under the contract; (3) defendant's breach of the contract; and (4) resulting damages. *Lacroce v. M. Fortuna Roofing, Inc.*, No. 14-7329, 2017 WL 431768, at *5 (D.N.J. Jan. 31, 2017). There are no material factual disputes as to any element of HJI's breach of contract claims. The parties entered into a valid agreement. SUMF ¶¶ 16-18. Moreover, Defendants understood SSR's payment obligations under the Agreement, knew that SSR did not make required recurring fee payments, and understood that SSR was liable for liquidated damages in the event of a breach. *See, e.g.*, Certification of Bryan Couch ("Couch Cert.") Ex. A, Response to No. 12 (stating that SSR did not pay all recurring fees); Couch Cert. Ex. B at 30:5-15; 31:22-32:6 (demonstrating that Defendants understood that SSR was required to make certain payments, that HJI could terminate the Agreement for failure to make such payments, and that SSR could be liable for liquidated damages in the event of a breach). Finally, HJI establishes that SSR owes $156,878.62 in outstanding recurring fees plus accrued interest. SUMF ¶ 46.

Although Defendants assert multiple affirmative defenses, largely contending that HJI breached the Agreement itself (D.E. 14 at 11-12), Defendants fail to provide the Court with any evidence in support. "[V]ague affirmative defenses are insufficient to create a question of material fact." *63 Nobe Mortg. Inv'rs, LLC v. 63 N. Beach, LLC*, No. 08-4129, 2009 WL 90361, at *3 (D.N.J. Jan. 13, 2009). As a result, there are no material issues of fact in dispute as to Counts Three and Five. Accordingly, summary judgment is granted to HJI for Counts Three and Five.

### 2. Breach of the Guaranty (Count Seven)

---

[2] Section 17.6.1 of the Agreement is a choice of law clause providing that the Agreement is governed by New Jersey law. Affidavit of Suzanne Fenimore in Support of Plaintiff's Motion for Summary Judgment Ex. A, § 17.6.1, D.E. 34-5.

HJI contends that summary judgment should also be granted as to Count Seven, which alleges that Gade breached the Guaranty. Plf's Br. at 7-10. To prove a claim for breach of a personal guaranty, a plaintiff must establish (1) the execution of the guaranty by the guarantor; (2) the principal obligation and terms of the guaranty; (3) the lender's reliance on the guaranty in extending monies to the borrower; (4) default by the principal obligor; (5) written demand for payment on the guaranty; and (6) failure of the guarantor to pay upon written demand. *Ramada Worldwide Inc. v. Jafri*, No. 12-5301, 2015 WL 404399, at *3 (DN.J. Jan. 29, 2015). HJI provides sufficient facts to establish each element. Gade acknowledged that she signed the Guaranty and that the terms clearly set forth her obligation to, upon default of SSR, "immediately make each payment and perform or cause [SSR] to perform, each unpaid or unperformed obligation of [SSR] under the Agreement." Fenimore Aff. Ex. C; Couch Cert. Ex. B at 32:7-33:5. In addition, the Guaranty expressly provides that its purpose is to induce HJI to sign the Agreement. Fenimore Aff. Ex. C. And, as discussed above, SSR defaulted under the Agreement. *See supra* III.A.1. Finally, HJI made written demand for payment under the Guaranty (Fenimore Aff. Ex. F at 2), and Gade failed to make payment or cause SSR to do so, (*id.* ¶ 40). Defendants do not provide the Court with any information that refutes HJI's evidence. Consequently, there is no material issue of fact as to Gade's failure to perform under the Guaranty. Summary judgment, therefore, is entered as to Count Seven.

### 3. Damages

For Counts Three, Five and Seven, HJI seeks as damages the outstanding amount of recurring fees plus interest and liquidated damages plus interest. SUMF ¶¶ 46, 53. As to the recurring fees, because the outstanding recurring fees are "natural and probable consequence of the breach," they are recoverable damages. *See Totaro, Duffy, Cannova & Co., L.L.C. v. Lane,*

*Middleton & Co., L.L.C.*, 191 N.J. 1, 14 (2007). HJI provided an itemized statement that clearly outlines the outstanding fees and interest due and owing to HJI. Fenimore Aff. Ex. H. Consequently, Defendants are liable to HJI for $156,878.62 in recurring fees.[3]

Turning to HJI's claim for liquidated damages, "[w]hether a liquidated damages clause is enforceable is a question of law for the court to decide." *Naporano Assocs., L.P. v. B & P Builders*, 309 N.J Super. 166, 176 (App. Div. 1998) (quoting *Wasserman's Inc. v. Township of Middletown*, 137 N.J. 238, 238 (1994)). When a liquidated damages clause is negotiated by parties with comparable bargaining power, the ultimate issue is whether the amount of liquidated damages is reasonable, either at the time of contract formation or the breach. *Id.* But "[a] term fixing unreasonably large liquidated damages is unenforceable on grounds of public policy as a penalty." *Ramada Worldwide Inc. v. Khan Hotels LLC*, No. 16-2477, 2017 WL 187384, at *6 (D.N.J. Jan. 17, 2017) (quoting Restatement (Second) of Contracts § 356(1) (1981)).

HJI's claim for liquidated damages does not require any further evidentiary proof because the amount was contractually agreed upon. *See, e.g.*, *Super 8 Motels, Inc. v. B & J (Radha), LLC*, No. 05-5713, 2006 WL 3256828, at *5 (D.N.J. Nov. 9, 2006). Moreover, there is no suggestion that the parties had unequal bargaining power. Lastly, the amount of liquidated damages appears reasonable. HJI's actual damages, which it could recover instead of liquidated damages, would be the lost recurring fees that HJI would have received but for the premature termination. SUMF ¶ 48. Because it is difficult to estimate these damages "due to the transient lodging business," the liquidated damages clause "represents a good faith estimate of the monetary damages that HJI

---

[3] State law governs the availability of prejudgment interest on state law claims. *Nance v. City of Newark*, 501 F. App'x 123, 129 n.5 (3d Cir. 2012). Under New Jersey law, a party is entitled to prejudgment interest if the parties' contract provides for such. *AGS Computs., Inc. v. Bear, Stearns & Co., Inc.*, 244 N.J. Super. 1, 4 (App. Div. 1990). Section 7.3 of the Agreement clearly sets for the parties' agreement as to prejudgment interest. SUMF ¶ 23.

sustains when a franchisee causes the premature termination of a franchise agreement." *Id.* ¶¶ 47-51. In this instance, HJI terminated the Agreement approximately three years into the fifteen-year term. Thus, HJI lost more than ten years of anticipated recurring fees. Moreover, taking into account the fact that HJI will likely be able to mitigate its damages, the amount of liquidated damages here is reasonable. Liquidated damages clauses similar to the clause at issue here have been enforced, by way of summary judgment by other courts in this district. *See, e.g.*, *Knights Franchise Sys., Inc. v. P.C.P.S. Corp.*, No. 06-5243, 2009 WL 3526229, at *5 (D.N.J. Oct. 21, 2009), *aff'd* 420 F. App'x 155 (3d Cir. 2011). As a result, HJI is entitled to $307,497.58 in liquidated damages, inclusive of interest.

### 4. Alternate Breach of Contract Claims

HJI also seeks summary judgment as to Counts Four and Six, which assert claims in the alternate of the breach of contract claims. In Count Four, HJI seeks actual damages if the Court determines that SSR is not liable for liquidated damages. *See* Compl. ¶¶ 60-63. Count Six is a claim for unjust enrichment. *Id.* ¶¶ 68-72. Because summary judgment is granted as to HJI for Counts Three, Five, and Seven, and SSR is liable for liquidated damages, summary judgment is denied as to Counts Four and Six as moot. *See, e.g.*, *Las Vegas Sands Corp. v. Ace Gaming, LLC*, 713 F. Supp. 2d 427, 443 n.25 (D.N.J. 2010) (dismissing unjust enrichment claim as moot because it was pled in the alternative to breach of contract claim for which plaintiff was entitled to summary judgment).

### B. Lanham Act Claim (Count One)

HJI argues that summary judgment should be granted as to Count One, a Lanham Act claim, due to Defendants' unauthorized use of HOWARD JOHNSON® marks. Plf's Br. at 10-

13. Section 32 of the Lanham Act provides that any person who, without the consent of the registrant

> use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant.

15 U.S.C. § 1114(1)(a). Thus, to establish a Lanham Act trademark infringement claim under Section 32, a plaintiff must show that (1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion. *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000).

Here, HJI establishes that it owns and registered the service mark HOWARD JOHNSON®, and related trade names and service marks. SUMF ¶ 8. HJI also establishes that Defendants continued to use the marks to rent rooms after HJI terminated the Agreement and requested that Defendants remove the marks within ten days of termination. *Id.* ¶ 43. Defendants, however, failed to remove marks until December 11, 2013. *Id.* ¶ 44. Defendants' continued use of the HOWARD JOHNSON® marks at the Facility after termination likely caused confusion or mistake, in violation of Section 32; when patrons saw the HOWARD JOHNSON® mark they likely and reasonably believed that they were staying at a Howard Johnson facility. Summary judgment, therefore, is granted as to Count One.

The Lanham Act authorizes an injured plaintiff to recover "any damages sustained by the plaintiff,' to be "assessed by the Court or under the Court's discretion." 15 U.S.C. § 1117(a). Thus, a plaintiff may recover (1) defendant's profits; (2) any damages sustained; and (3) costs of the action. *Id.* In this instance, HJI seeks $6,128.31 in trademark damages. HJI reached this

amount by multiplying SSR's average monthly recurring fees for the last twenty-four months the Agreement was in effect ($3,064.16) by the number of months that Defendants were confirmed to be infringing (2 months).  SUMF ¶¶ 54-55.  HJI seeks this amount as opposed to actual damages because it does not know the Facility's actual gross income during the two-month time period in which Defendants misused HOWARD JOHNSON® marks.  Consequently, "HJI is forced to rely on an estimate of the [g]ross [r]oom [r]evenues and the resulting [r]ecurring [f]ees."  Plf's Br. at 11.  The Court concludes that this is a reasonable measurement of the damages HJI sustained as a result of Defendants' misuse.  *See, e.g.*, *Travelodge Hotels, Inc. v. Seaside Hosp., LLC*, No. 15-5595, 2016 WL 5899281, at *5 (D.N.J. Oct. 6, 2016) (using similar damages calculation for Lanham Act claim in motion for default judgment).

HJI also seeks treble damages for Count One.  Plf's Br. at 18.  Section 1117(b) provides that

> [T]he court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, . . . together with a reasonable attorney's fee, if the violation consists of intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark, . . . in connection with the sale, offering for sale, or distribution of goods or services.

15 U.S.C. § 1117(b).  Treble damages, however, should only be imposed "if the defendant's infringement was intentional, knowing, or willfully blind."  *Travelodge Hotels, Inc.*, 2016 WL 5899281, at *6 (*Microsoft Corp. v. CMOS Techs.*, 872 F. Supp. 1329, 1339-41 (D.N.J. 1994)).  Although HJI states that Defendants' actions were deliberate and willful (SUMF ¶ 55), the Court determines that there is insufficient evidence to support this finding.  Importantly, HJI states that it sent Defendants notification to cease and desist from the misuse of the HOWARD JOHNSON® marks (SUMF ¶ 43) but aside from the instructions in the September 13, 2013 termination letter as to how to "de-identify" the Facility (Fenimore Aff. Ex. F), HJI provides no additional evidence.

11

As a result, the Court cannot conclude that Defendants' actions were intentional, knowing, or willfully blind. Therefore, the Court will not treble the trademark infringement damages.

In sum, summary judgment is granted as to Count One, and HJI is entitled to $6,128.31 in damages.

### C. Attorneys' Fees

HJI contends that it is entitled to recover attorneys' fees and costs because the parties expressly agreed to such in Section 17.4 of the Agreement. Plf's Br. at 18-19. Under New Jersey law, attorneys' fees are recoverable if authorized by a contract between the parties. *Specialized Med. Sys., Inc. v. Lemmerling*, 252 N.J. Super. 180, 185 (App Div. 1991). Section 17.4 of the Agreement states that the non-prevailing party is responsible for reasonable attorneys' fees and costs incurred in connection with legal proceedings instituted to recover monies due and owing under the Agreement. SUMF ¶¶ 32. In addition, the Guaranty incorporates Section 17 of the Agreement. *Id.* ¶ 35. Accordingly, HJI is entitled to recover reasonable attorneys' fees and costs for work incurred to recover money due under the Agreement.

The Agreement, however, does not entitle HJI to recover attorneys' fees for work done in relation to the Lanham Act claim, as it is not money due and owing under the Agreement. Here, HJI's attorney worked through a fixed fee arrangement. Couch Cert. ¶ 18. The Court, however, does not have detailed billing records that it can use to determine how much time Plaintiff's attorneys spent on the Lanham Act claim. The Court also cannot determine whether the fixed fee was otherwise reasonable in light of the time that HJI's attorneys spent on this matter. As a result, within thirty days from the date of this Opinion, Plaintiff must provide the Court with an attorney certification explaining why the requested amount is reasonable and also provide detailed billing

records so that the Court can make an informed decision as to whether the requested fees are reasonable. Consequently, the Court will deny, without prejudice, the requested fees at this time.

### D. Dismissal of Defendants' Counterclaims

HJI also argues that it is entitled to summary judgment dismissing Defendants' Counterclaims. Plf's Br. at 20-22. In Count One of the Counterclaim, Defendants allege that HJI failed to maintain expected levels of consistency, uniformity, worth and recognition of the HJI brand. Defendants allege that as a result of these failures, they were damaged. Counterclaim ¶¶ 32-36, D.E. 14. Count Two alleges that HJI breached the covenant of good faith and fair dealing because "in contracting with third-party booking sites, [HJI] forced room rates for the subject hotel to drop below the amount required to meet the financial obligations of [Defendants]. *Id.* ¶ 39. Defendants also contend that HJI allowed other hotels to open in the same geographical area, which took guests away from the Facility. Defendants maintain that this caused them monetary harm. *Id.* ¶¶ 37-43. Finally, in Count Three, Defendants allege that HJI failed to evenly enforce provisions of the "Systems Standards Manual" and did not maintain a consistent level of advertising and marketing of the brand, as required by the Agreement. Defendants allege that they suffered monetary damages as a direct result. *Id.* ¶44-47.

Defendants, however, fail to support their allegations with any evidence. This lack of evidence is a sufficient basis to grant summary judgment to HJI. *See Edmond v. Plainfield Bd. of Educ.*, 171 F. Supp. 3d 293, 304 (D.N.J. 2016) ("With respect to an issue on which the nonmoving party bears the burden of proof[,] the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." (quoting *Celotex Corp.*, 477 U.S. at 325)). Summary judgment, therefore, is granted as to HJI for all of Defendants' Counterclaims. Accordingly, Defendants' Counterclaims are dismissed.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's motion (D.E. 34) is **GRANTED in part and DENIED in part.** An appropriate Order accompanies this Opinion.

Dated: April 3, 2017

                                                   **_s/ John Michael Vazquez_**
                                                   John Michael Vazquez, U.S.D.J.